## Commonwealth v. Metzger

*F. Porter Wagner*, for Commonwealth.

*E. Robert Marks*, for Borough of Danville.

*George O. Wagner*, for defendant.

KREISHER, P. J., December 8, 1960.—Sometime between 4 and 5 a.m. a Danville Borough policeman, while on patrol, caused the tractor-trailer outfit of the above-captioned defendant, which was loaded with rice coal to be weighed at the borough scales and the unit was found to weigh 62,280 pounds. The authorized limit for this unit was 60,000 pounds, plus three percent allowance, or 61,800 pounds, so that defendant was charged with 480 pounds overweight. He was taken before a justice of the peace and, after the charge was lodged against him, he was fined $60 and $5 costs.

Defendant is a resident of the Borough of Shamokin and has been in the coal trucking business since 1932, hauling most of his coal from the anthracite region near Shamokin to the industrial areas near Corning, New York, and in all these years, this is the first offense of any type of motor vehicle violation by this defendant.

The matter came before the court on appeal, and after a hearing de novo, the record having now been transcribed and filed, the case is before us for disposition.

The Commonwealth's case as testified to by the police officer and the borough weighmaster is not contradicted by defendant. However, he endeavors to explain the reason for the alleged violation and contends he should be excused from the penalty provisions of the act.

At an early date the Borough of Danville installed a large Howe Scales for the weighing of trucks at the municipal water station at the north end of the river bridge.

The borough also employs a full-time night police force which maintains a highly vigilant check on large trucks traveling through the borough during the early morning hours on the theory that overweight loads are generally being transported at this time. As a result of this vigilance, the Montour County court has been confronted with an abnormal number of appeals in overweight cases, and we have been obliged to pass upon some very novel explanations or defenses and some very interesting questions of fact.

This present appeal is no less intriguing than some of those of the past because of defendant's prior excellent record, his apparent sincerity on the witness stand and his somewhat plausible explanation for the inadvertent cause of the apparent violation. We are

asked by his counsel to close our eyes to the admitted technical violation of the act and sustain this appeal.

Defendant testified that on this occasion, as was his custom, he went to the colliery on the ninth day of the month at approximately 4 p.m. and received his load of coal and the weight slip issued by the colliery offered in evidence for this load shows the gross weight to have been 62,055 pounds made up as follows: Tare, 21,840 pounds; water allowance, 1,915 pounds; net, 38,300 pounds.

Defendant admits that he transported this over-weight load from the colliery to his home where he parked the truck and left the load stand until the morning of the twelfth between 3 and 4 a.m. when he started on his trip to Corning which brought him through the Borough of Danville sometime after 4 o'clock.

He testified that the purpose of letting the load stand this length of time was to permit the water to drain from the load so that he would not be overloaded, but it so happened that on his trip from Shamokin to Danville, he ran into a heavy shower, and the load then must have taken on this excessive weight from the rain. He admits that he has no tarpulin for the truck and that he was using none on the night of the alleged offense.

In addition, defendant testified when he arrived at the borough scales in company with the officer that great quantities of water were present on the platform and that the weighmaster was not present at the scales. He testified he insisted that, because of the elements, the scales be balanced before proceeding on the platform with his load, but the officer would not permit this procedure.

He also testified that the police officer worked the mechanism which put the scales in operation in the

weighmaster's absence and that all the weighmaster did was appear on the scene after the weighing had been completed and make out the weight slip which was offered in evidence.

It is, therefore, defendant's contention that the water from the rain which the coal absorbed and the water from the rain which the platform contained readily accounts for the 480 pounds of excessive weight.

The weighmaster testified that the scales work automatically, and that the weight is printed on a slip by the scales itself. The variance of the scales due to the elements would not exceed more than 30 or 40 pounds in his best judgment. The weighmaster did agree that a load of coal could absorb hundreds of pounds of water.

We have had similar cases of this nature before us, and we held in the case of Commonwealth v. Olshefski, 64 D. & C. 343, that "It is no defense to a prosecution for driving an overloaded truck in violation of The Vehicle Code that defendant had first obtained a weight certificate from a licensed weighmaster which indicated that the truck was not overloaded, for the offense is complete without any improper intent."

We pointed out in that case that the offering in evidence of a weight slip dated some days prior to the alleged offense leaves so much room for doubt as to whether that particular weight slip represents the same or identical load that it is of little probative value as a defense.

In the case of Commonwealth v. Edmond R. Mostowski in the Court of Quarter Sessions of Montour County to no. 19, February sessions, 1958, unreported, we dwelled at length on the problem of overweight alleged to have been taken on by reason of the elements, and we denied the defense on the ground that the offense is complete without any intention necessary

on the part of defendant, and because the legislature, in fixing the maximum load limits, provided for these unforeseen emergencies by allowing an excess of three percent in addition to the maximum load.

It seems to us that defendant in this case is not nearly in as good a position as defendant was in the Mastowski case, because in that case defendant offered into evidence a weight slip of his alleged load made two or three days previously at his home which showed a legal load, while in the present case defendant's own exhibit shows he was overloaded at the time he left the colliery, but he endeavors to excuse this conduct by his alleged parking of his truck for two days at his home believing the water would drain off it.

We here point out that the water allowance shown on the weight scales from a colliery does not necessarily mean that the load contains that much water which might or might not drain from the load. It is a mathematical calculation set up from the usage in the trade in order to carry on a profitable business.

Therefore, without reiterating what we said in the 10 page opinion filed in the Mostowski case, we believe it is our duty, irrespective of defendant's previous good reputation for not violating The Vehicle Code, to find that on this particular occasion he was driving with excessive weight and that, by the use of his senses, he should have reasonably realized that his load was or would become excessive due to the rain, and that he chose to take a chance, and unfortunately on this occasion ran into difficulty because of the vigilance of the Danville night police force.

Therefore, without further discussion, we enter the following:

### Order of Court

And now, to wit, December 8, 1960, the appeal in the above-captioned case is dismissed at the cost of defendant.